

# SUPREME COURT OF MISSOURI
## en banc

JOHNATHAN BYRD, ET AL.,           )
          )
            Appellants,    )
          )
THE GATHERING TREE d/b/a EDEN   )
VILLAGE,           )
          )
            Appellant,     )
v.                     )      No. SC100045
          )
STATE OF MISSOURI, ET AL.,       )
          )
            Respondents.   )

*Opinion issued December 19, 2023*

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY**
The Honorable S. Cotton Walker, Judge

Appellants[1] brought single subject, clear title, and original purpose challenges to the validity of the Truly Agreed and Finally Passed House Bill 1606 (2022) ("TAFP HB 1606"). The circuit court rejected these challenges and sustained Respondents'[2] motion for judgment on the pleadings. Appellants appeal, and this Court

---

[1] The term "Appellants" refers to Johnathan Byrd, Jessica Honeycutt, Allison Miles, and The Gathering Tree d/b/a Eden Village.

[2] The original defendants in this case were the State of Missouri, Eric Schmitt (in his capacity as Attorney General), the Missouri Housing Development Commission, and the Missouri Department of Economic Development. The Missouri Department of

has jurisdiction pursuant to article V, section 3 of the Missouri Constitution. The circuit court's judgment is reversed.

## Factual and Procedural Background

As originally proposed, HB 1606's title was "AN ACT To repeal sections 50.800, 50.810, 50.815, and 50.820, RSMo, and to enact in lieu thereof two new sections relating to county financial statements." As originally introduced, HB 1606 sought to reduce the amount of information certain counties were required to publish in their financial statements. The House of Representatives passed a house committee substitute for HB 1606 (the "House Committee Substitute"), which merely changed the date by which such statements must be published.

The Senate's Local Government and Elections Committee recommended that HB 1606 pass in the form of a senate committee substitute to the House Committee Substitute (the "Senate Committee Substitute"), which was titled "AN ACT To repeal [eleven sections of the Revised Statutes of Missouri] and to enact in lieu thereof nine new sections relating to county officials, with penalty provisions." The Senate adopted a senate substitute to this Senate Committee Substitute (the "Senate Substitute"). The adopted changes included: (1) modifying the narrative title of the bill from "relating to county officials" to "relating to political subdivisions," and (2) adding section 67.2300,

_____

Economic Development was later dismissed as a party to this litigation. Additionally, Attorney General Andrew Bailey was automatically substituted for his predecessor pursuant to Rule 52.13(d). The term "Respondents" refers to these remaining parties.

2

RSMo,[3] to the bill. This new section 67.2300, among its many provisions, sought to impose restrictions on the expenditure of state funds allocated for combating homelessness and make the act of unauthorized sleeping and camping on state-owned lands a class C misdemeanor.

On May 5, 2022, the House refused to pass the Senate Substitute to HB 1606 and requested that the Senate recede or grant a conference. The Senate refused to concede, and the bill went to a conference committee. On May 11, the House and Senate passed a conference committee substitute to HB 1606, i.e., TAFP HB 1606. This final version included the new section 67.2300 and 49 other new sections. In June, Governor Parson signed TAFP HB 1606 into law.

In August and September, Appellants filed separate petitions seeking declaratory and injunctive relief in the circuit court of Cole County, arguing TAFP HB 1606 violated the single subject, clear title, and original purpose requirements contained in article III, sections 21 and 23 of the Missouri Constitution. In October, the circuit court consolidated the cases. On November 2, the parties filed cross-motions for judgment on the pleadings. The circuit court sustained Respondents' motion and entered judgment in favor of Respondents, concluding the legislature did not violate the procedural requirements of article III, sections 21 and 23 when it enacted TAFP HB 1606. Appellants timely appealed the circuit court's judgment to this Court.

---

[3] All statutory references to section 67.2300 are to RSMo Supp. 2022 unless otherwise noted. All other statutory references are to RSMo 2016 unless otherwise noted.

**Standard of Review**

"Constitutional challenges to a statute are reviewed *de novo*." *Rentschler v. Nixon*, 311 S.W.3d 783, 786 (Mo. banc 2010). Appellants attack the validity of TAFP HB 1606 on the ground that the addition of section 67.2300 to the bill altered its original purpose, introduced a second subject to the bill, and rendered the bill's title unclear in violation of the procedural requirements set forth in article III, sections 21 and 23. Such attacks are not favored, and Appellants bear the burden of establishing these violations. *Calzone v. Interim Comm'r of Dep't of Elementary & Secondary Educ.*, 584 S.W.3d 310, 315 (Mo. banc 2019). "A statute is presumed valid and will not be held unconstitutional unless it clearly contravenes a constitutional provision." *Id.* (internal quotations omitted).

**Analysis**

Appellants argue the inclusion of section 67.2300 in TAFP HB 1606 violates the single subject requirement of article III, section 23 because the provisions in this section do not fairly relate to HB 1606's subject of "political subdivisions." This Court agrees and holds TAFP HB 1606 violates the constitutional single subject requirement because the addition of section 67.2300 to the bill introduced at least one impermissible additional subject, i.e., homelessness.

Article III, section 23 of the Missouri Constitution provides, "No bill shall contain more than one subject which shall be clearly expressed in its title[.]"[4] "'[T]his Court's

---

[4] This Court has often noted "the single subject and clear title requirements … in article III, section 23, [] are distinct limitations on the procedures by which the general assembly may pass legislation[,]" *Calzone*, 584 S.W.3d at 322 (internal quotations omitted), and should not be conflated into a single challenge.

test for determining whether a bill violates the single subject requirement of article III, section 23, has remained virtually the same since 1869.'" *Calzone*, 584 S.W.3d at 321 (Mo. banc 2019) (alterations in the original) (quoting *Hammerschmidt v. Boone Cnty.*, 877 S.W.2d 98, 102 (Mo. banc 1994)). "A bill does not violate the single subject requirement '[s]o long as the matter is germane, connected, and congruous.'" *Id.* (alterations in the original) (quoting *State v. Mathews*, 44 Mo. 523, 527 ( 1869)). In other words, "the test for whether a bill addresses a single subject is ***not how the provisions relate to each other***, but whether the provisions are ***germane to the general subject*** of the bill." *Giudicy v. Mercy Hosps. E. Cmtys.*, 645 S.W.3d 492, 499 (Mo. banc 2022) (emphasis added) (internal quotations omitted).[5]

This Court first "looks to the bill's title to determine its subject." *Calzone*, 584 S.W.3d at 321 (internal quotations omitted). So long as "'the bill's title is not too broad or amorphous to identify the single subject of the bill, then the bill's title serves as the touchstone for the constitutional analysis.'" *Id.* at 321-22 (quoting *Mo. Health Care*

---

[5]   Respondents argue the use of the term "provision" in this Court's test implies that this Court looks only to the entirety of the challenged statutory section to determine if its inclusion in the bill violates the single subject requirement. But this Court's single subject test is not so limited. For more than 130 years, this Court has said, "'Where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the incidents or means of accomplishing it, then the subject is single[.]'" *Ewing v. Hoblitzelle*, 85 Mo. 64, 71 (1884) (quoting Theodore Sedgwick, *A Treatise on the Rules Which Govern the Interpretation and Construction of Statutory and Constitutional Law*, at 521 (2d ed. 1874)); *see also State ex rel. Atty. Gen. v. Miller*, 13 S.W. 677, 678 (Mo. 1890) (collecting cases endorsing this rule); *Provision*, *Black's Law Dictionary* (11th ed. 2019) (defining "provision" as "[a] clause in a statute, contract, or other legal instrument"). The single subject limitation is violated, therefore, if any clause, portion or other aspect of the bill is not germane to the bill's general subject.

*Ass'n v. Atty. Gen. of Mo.*, 953 S.W.2d 617, 622 (Mo. banc 1997)).  This Court then looks to the challenged provisions to determine whether they "fairly relate to, have a natural connection with, or are a means to accomplish the subject of the bill as expressed in the title." *Fox v. State*, 640 S.W.3d 744, 756 (Mo. banc 2022).

The title of TAFP HB 1606 was "AN ACT [t]o repeal [forty-two] sections … and to enact in lieu thereof fifty new sections ***relating to political subdivisions***, with a delayed effective date for a certain section and with penalty provisions." (Emphasis added).  Using TAFP HB 1606's title as the touchstone for this analysis, the subject of the bill was political subdivisions; therefore, the primary inquiry is whether all of the provisions of TAFP HB 1606, including each of the provisions in the new section 67.2300, fairly relate to, have a natural connection with, or are means to accomplish TAFP HB 1606's subject, i.e., "political subdivisions."

This case is analogous to *Rizzo v. State*, 189 S.W.3d 576, 578 (Mo. banc 2006), which involved a challenge to the constitutional validity of HB 58 (2005) repealing 130 sections and enacting 165 sections "relating to political subdivisions."  Specifically, the challengers in *Rizzo* argued the inclusion of section 115.348, RSMo  Supp. 2005, in the bill violated the constitutional single subject requirement.  *Id.*  Section 115.348, RSMo Supp. 2005, provided, "No person shall qualify as a candidate for elective office in the State of Missouri who has been found guilty of or pled guilty to a felony or misdemeanor under the federal laws of the United States of America."  This Court held the inclusion of section 115.348 in HB 58 violated the single subject requirement because, even though the new section was tangentially related to political subdivisions, its "*raison d'etre …*

6

was to create a restriction on all persons convicted of federal crimes running for public office[.]" *Rizzo*, 189 S.W.3d at 580 (internal quotations omitted). This Court went on to note that section 115.348 "clearly [contained] a separate subject" because it "affect[ed] candidates in all elections," not just local elections. *Id.* at 581. In other words, because section 115.348 did not fairly relate to or have a natural connection with HB 58's subject "political subdivisions," it exceeded "the scope of H.B. 58's declared subject[.]" *Id.*

Like section 115.348 in *Rizzo*, section 67.2300 exceeds the subject "political subdivisions," which was set out in the title to TAFP HB 1606. Even though section 67.2300 contains provisions regulating the expenditure of state funds for housing or homelessness, and even though such provisions would apply to political subdivisions receiving those funds, the new statute's provisions apply to every entity receiving state funds, including not-for-profit organizations and private developers. *See, e.g.*, § 67.2300.2(2)(a) (noting that state funds shall be used for camping facilities and that "[i]ndividuals shall only camp and store personal property at such facilities in the areas designated to each individual *by the agency providing the camping facilities*" (emphasis added)); § 67.2300.4(2) (noting that "[p]olitical subdivisions *and not-for-profit organizations* may use state grants otherwise used for permanent housing to conduct surveys to identify individuals with the greatest number of days unhoused, in jail or prison, or hospitalized" (emphasis added)). Additionally, other provisions of section 67.2300 do not relate to political subdivisions at all. *See, e.g.*, § 67.2300.3 ("*A private campground owner or an employee or officer of a private campground* operating such facility pursuant to this section shall be subject to the [immunity] provisions of section

537.328." (emphasis added)); § 67.2300.5 (noting the "use of state-owned lands for unauthorized sleeping, camping, or the construction of long-term shelters" is a class C misdemeanor).

Accordingly, as in *Rizzo*, this Court holds the connection between the various provisions of section 67.2300 and the subject "political subdivisions" is remote at best and, in some instances, completely missing. Those provisions do not fairly relate to or have a natural connection with that subject and, instead, fairly relate to and have a natural connection with the wholly different subject of homelessness. The result, therefore, is that the inclusion of section 67.2300 in TAFP HB 1606 violated the single subject requirement of article III, section 23.[6]

Having determined the inclusion of section 67.2300 in TAFP HB 1606 violated one of the constitution's bill passage requirements, the Court must address the question of whether the portions of TAFP HB 1606 that are not germane to its "political subdivisions" subject can be severed (thereby saving the remaining portions of the bill) or whether the entire bill must be struck down. This Court has said that, when the legislature violates one of the constitution's procedural bill passage requirements, judicial severance will be appropriate only when "this Court is convinced *beyond a reasonable doubt* that the legislature would have passed the bill without the additional provisions *and* that the provisions in question are not essential to the efficacy of the bill." *Mo.*

---

[6]  Because this Court holds for Appellants on this ground, it declines to address Appellants' clear title and original purpose arguments.

*Roundtable for Life v. State*, 396 S.W.3d 348, 353 (Mo. banc 2013) (emphasis added) (internal quotations omitted).[7] "Both of these inquiries seek to assure the Court that, beyond a reasonable doubt, the bill would have become law – and would remain law – even absent the procedural violation." *Id.* at 353-54.

Here, the Court holds there is no basis in the record for concluding beyond a reasonable doubt that the legislature would have passed TAFP HB 1606 without the new section 67.2300. When the House initially passed HB 1606: (1) its narrative title was "relating to county financial statements," and (2) the substance of the bill was limited to repealing four sections and enacting two sections relating to that subject. The Senate Committee Substitute for HB 1606 then changed the narrative title to "relating to county officials, with penalty provisions," and repealed and reenacted sections relating to county financial statements, county officials, and real estate taxes. The Senate Substitute added 19 further amendments to HB 1606, including the addition of section 67.2300. After conference, the final version of TAFP HB 1606 included section 67.2300 and 49 other newly enacted provisions, many of which were not germane to the subject of "political subdivisions" set forth in the bill's title.[8]

---

[7] As explained in *Missouri Roundtable for Life*, 396 S.W.3d at 353, there are separate standards applied to guide this Court's severance analyses depending upon whether the issue arises as a result of a **procedural** constitutional violation or a **substantive** constitutional violation, and the standard in section 1.140 applies only to the latter.

[8] In addition to the non-germane provisions of section 67.2300, *amici curiae* Missouri Budget Project points out in its brief that TAFP HB 1606 contains several other provisions having no relation to the subject of political subdivisions. *See, e.g.*, § 523.061, RSMo Supp. 2022 (addressing the determination of homestead taking and heritage value

9

It is certainly possible the General Assembly would have passed TAFP HB 1606 without the inclusion of section 67.2300, but this is mere speculation and falls far short of the standard set forth above. What was true in *City of De Soto v. Parson*, 625 S.W.3d 412 (Mo. banc 2021), is true in this case as well, i.e., "there is simply no basis for inferring – with the high degree of certainty required by this Court's prior cases – that this is what ***would*** have happened." *Id.* at 419 (emphasis in the original). It takes an extraordinary showing to convince this Court to engage in judicial surgery to save a bill infected with the otherwise fatal constitutional disease of multiple subjects, and no effort was made by any party to make such a showing here.

### Conclusion

For the reasons set forth above, this Court holds TAFP HB 1606 violates the single subject requirement of article III, section 23 of the Missouri Constitution. Pursuant to Rule 84.14, this Court hereby enters judgment for Appellants declaring TAFP HB 1606 invalid in its entirety.

_____
Paul C. Wilson, Judge

Russell, C.J., Powell, Fischer, Ransom, and
Broniec, JJ., concur.
Gooch, J., not participating.

---

in a condemnation proceeding); §§ 1-6, HB 1606 (2022) (authorizing the governor to sell, transfer, or grant certain state property).